FILED

01 JUN -6 PM 3:33

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

IN THE

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| **DARLENE PEDICINO,**<br>2089 Van Oaks Drive<br>Twinsburg, Ohio 44087<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>**CITY OF TWINSBURG,**<br>c/o Hon. Katherine Procop, Mayor<br>10075 Ravenna Road<br>Twinsburg, Ohio 44087<br><br>　　　　　　　　Defendant. | **5:01CV 1371**<br>Case No. _____<br><br>Hon. __JUDGE POLSTER__<br><br>　　MAG. JUDGE LIMBERT<br>**COMPLAINT**<br><br>**JURY DEMAND ENDORSED HEREON** |

　　　　Plaintiff Darlene Pedicino, by and through her undersigned counsel of record, for her cause of action hereby alleges as follows:

　　　　1. Plaintiff Darlene Pedicino ("Pedicino") is a resident of the City of Twinsburg, Summit County, State of Ohio, and at all times relevant hereto was both an employee of the City of Twinsburg and a "qualified individual" as defined by 42 U.S.C. § 12111(8) until June 15,

2000, when she left her employment following the City's violations of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*, as more specifically set forth below.

2. Defendant City of Twinsburg is a political subdivision of the State of Ohio and is an "employer" and "covered entity" as defined by 42 U.S.C. §§ 12111(2) and 12111(5)(A).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

4. Prior to June 1, 2000, Pedicino had been employed by the City of Twinsburg for approximately three years, working 20 hours per week and discharging duties split between two positions, one as the Civil Service Secretary, reporting to the Civil Service Commission, and one as the receptionist, reporting to the Mayor's office. Pedicino's employment was a part-time position. Her compensation included hourly wages as well as paid vacation leave, holidays, and sick days on a *pro rata* basis.

5. On or about June 1, 2000, Pedicino's 20-hour-per-week job was reduced to eight (8) hours per week through elimination of her receptionist duties for the Mayor's office and detailing her to only her position as Civil Service Secretary. This reduction in duties occurred in the immediate aftermath of several months of conversations Pedicino had with both the Mayor and the city's Director of Human Resources concerning Pedicino's schedule and her need to arrange her schedule to remain available to provide care for her critically ill mother.

6. In March 2000, the personal demands on Pedicino's time arose as she became aware of her mother's critical medical condition. Pedicino's mother had been diagnosed with cancer and was experiencing great pain. This pain interfered with Pedicino's mother's mobility

and ability to care for herself, creating a crisis situation within Pedicino's family. With her employer's permission, Pedicino began using her sick days to care for her mother.

7. On March 13, 2000, Pedicino brought the worsening situation to the attention of the city's Director of Human Resources by inquiring into the options available to her. Pedicino was advised that she did not qualify for accommodation under the Family and Medical Leave Act, but was then assured that they would be able to "work something out." Pedicino specifically asked about the continued use of her accumulated sick days on those days where her personal attention to her mother's needs would be the greatest, but Pedicino never received an answer to this inquiry.

8. On March 17, 2000, Pedicino used a sick day to accompany her mother to chemotherapy treatment and on March 24, 30, and 31, and again on April 6 and 7 of 2000, Pedicino used vacation days, with the approval of the Mayor, to provide care for her mother as her mother was unable to care for herself.

9. On March 29, 2000, the city's Director of Human Resources approached Pedicino with a proposal that she accept a new position with the City of Twinsburg that would combine her Civil Service duties with other responsibilities that would **increase** the city's demand on Pedicino's time to 32 hours per week. This new position was a secretarial position in the Human Resources Department that would provide administrative support for all of the city's boards and commissions. Part of the responsibilities of this new position would have included attending several evening meetings each week.

10. At the time the Director of Human Resources made the proposal referenced in Paragraph 9 of this complaint, city officials were well aware that Pedicino's family crisis caused Pedicino to inquire as to ways of **limiting** her duties with the city while maintaining a

3

reasonable level of income, not aggravating her personal situation by imposing even greater demands on Pedicino's time. Pedicino was surprised that the city's proposal would have required her to **increase** her hours and even take away Pedicino's otherwise free evenings to cover various meetings.

11. When Pedicino expressed her concerns regarding the proposal to increase her commitment to 32 hours per week, the Director of Human Resources responded by offering instead to reduce Pedicino's hours to eight (8) per week, to include only the position as Civil Service Secretary, and claimed that the city could not justify continuing Pedicino at 20 hours per week.

12. Pedicino thereafter learned that the City of Twinsburg intended to advertise for a new 24-hour-per-week position of Boards and Commissions Secretary.

13. At all relevant times, Pedicino desired to maintain a workload of approximately 20 hours per week. Upon further checking into the position of Boards and Commissions Secretary, Pedicino determined that she was qualified for the new position.

14. The 24-hour-per-week position referenced in Paragraphs 12 and 13 of this complaint was posted on the Internet on April 16, 2000, as a secretarial position for 20 to 24 hours per week at a wage rate Pedicino would have been willing to accept.

15. On April 17, 2000, Pedicino met with the city's Director of Human Resources and expressed her interest in the 24-hour-per-week position. To Pedicino's surprise, the Director of Human Resources flatly refused to consider Pedicino for the position, insisting instead that she accept the proposal for a reduction in her hours to eight (8) per week, with a total loss of the vacation leave, and other benefits Pedicino had been receiving as a part-time employee.

4

16. Pedicino was embarrassed and humiliated by the shocking reaction of the city's Director of Human Resources to Pedicino's mere inquiry into the new position of Boards and Commissions Secretary, particularly insofar as such conduct demonstrated utter disregard for Pedicino's personal circumstances and Pedicino's desire to continue to perform her duties without having unreasonably to compromise her personal obligation to provide care for her critically ill mother.

17. Pedicino thereafter contacted the Chairman of the Twinsburg Civil Service Commission, Dennis Bernaciak, to discuss the situation and ask for his assistance in resolving the issues with the Director of Human Resources. Thereafter, on April 20, 2000, Pedicino was informed that her position with the city would be reduced to eight (8) hours per week as Civil Service Secretary only, but was not given an effective date for that job action.

18. On April 25, 2000, Pedicino met with the city's Director of Human Resources again to make sure there was no doubt as to her willingness to maintain her 20-hour-per-week schedule or to apply for the 24-hour-per-week-position of Boards and Commissions Secretary. At that meeting, the Director of Human Resources **again** refused to consider Pedicino for the 24-hour-per-week position, insisting instead that Pedicino either agree to reduce her workload to eight (8) hours per week without benefits or increase her workload to 32 hours per week. Alternatively, the Director of Human Resources suggested that a **temporary** position could be made available to Pedicino **for the income tax season only** in the city's Tax Department to make up the remaining 12 hours of her schedule.

19. Pedicino advised the Director of Human Resources during the meeting referenced in Paragraph 18 of this complaint that she had hired a caregiver for her mother on April 18, 2000, and asked about using sick days if she needed to take time off to provide care for her

5

mother if a conflict arose with the caregiver. To Pedicino's utter amazement, the Director of Human Resources **reacted in a hostile manner** and told Pedicino in no uncertain terms that if she took the temporary work and did not perform the filing duties in the Tax Department on a regular basis, the Tax Administrator would "probably dump [her] like any other temp."

20. On April 28, 2000, the city's Director of Human Resources called Pedicino into her office and demanded that Pedicino sign two agreements regarding her employment. The first, a Civil Service Secretary Change Notice, would have reduced Pedicino's hours to eight (8) per week. The second, a Temporary Tax Filing Agreement, established a temporary position for Pedicino for 12 hours per week, but eliminated the vacation leave, health care, sick time, and other benefits that she had been receiving previously.

21. At that meeting of April 28, 2000, Pedicino questioned the exclusion of benefits and the Director of Human Resources admitted that Pedicino would be the only city employee subjected to such an arrangement. Pedicino refused to sign the documents at that time and the Director of Human Resources thereupon insisted that Pedicino decide by May 1, 2000, whether she would sign the agreements.

22. On May 1, 2000, Pedicino sent a grievance letter to the Mayor regarding Pedicino's decision not to sign the Temporary Tax Filing Agreement and detailing the difficulties Pedicino was experiencing with the Director of Human Resources over the question of the need to accommodate Pedicino's personal schedule for giving care to her critically ill mother. Pedicino never received a response from the Mayor's office to her May 1, 2000, grievance letter.

23. Thereafter, Pedicino was presented with an offer eight (8) hours per week as Civil Service Secretary only, effective June 1, 2000. Pedicino signed that offer.

24. On May 17, 2000, Pedicino advised the Mayor that working eight (8) hours a week was not enough for her and inquired as to why she had not been considered for the 24-hour-per-week position as Boards and Commissions Secretary. The Mayor claimed she was not aware that Pedicino had not been considered for the position.

25. On June 3, 2000, in a letter to the Civil Service Commission and the Mayor, Pedicino resigned her position with the City of Twinsburg, effective June 15, 2000.

26. Pedicino thereafter filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 220A10461, asserting that she had been discriminated against because of her association with a disabled individual in violation of 42 U.S.C. § 12112(b)(4). The EEOC issued a right-to-sue letter on March 8, 2001, and closed its file on Pedicino's charge without making any findings in her case.

## COUNT ONE

### *Violations of the Americans With Disabilities Act, 42 U.S.C. § 12112(b)(4)*

27. Pedicino at all times relevant hereto was a "qualified individual" as defined by 42 U.S.C. §12111(8).

28. At all times relevant hereto, Pedicino acted to bring a reasonable resolution to her employment circumstances with the City of Twinsburg in order to provide adequate care for her mother, who was critically ill with cancer.

29. The City of Twinsburg, by and through the acts and omissions of its employees and elected representatives, violated 42 U.S.C. § 12112(b)(4) by excluding and/or otherwise denying equal job opportunities or benefits to Pedicino because of her relation to and association with an individual with a known disability, *i.e.*, Pedicino's critically ill mother.

7

30. At all times relevant hereto, Pedicino was qualified for the position she was performing throughout June 15, 2000, and was qualified for the position as Boards and Commissions Secretary, which position was denied to her.

31. The City of Twinsburg, through the acts and omissions of its employees and elected representatives, took adverse action against Pedicino in violation of the Americans With Disabilities Act, as amended, because of her relation to and association with an individual with a known disability by reducing Pedicino's hours and eliminating benefits after Pedicino began using approved vacation leave and sick time to provide care for her critically ill mother, by failing and refusing to provide a reasonable accommodation to Pedicino on account of her relation to and association with her critically ill mother, by demanding that Pedicino increase her workload 32 hours per week, and by reducing Pedicino's workload to a mere eight (8) hours per week, all with full knowledge of both the demands otherwise placed on Pedicino's time on account of her obligations to her mother as well as the duties Pedicino was discharging in caring for her critically ill mother.

32. The City of Twinsburg further violated the Americans With Disabilities Act, as amended, by failing and refusing to consider Pedicino for the position of Boards and Commissions Secretary on account of Pedicino's relationship to and association with her critically ill mother.

33. As a direct and proximate result of defendant's acts and omissions, as alleged above, Pedicino suffered pecuniary and non-pecuniary damages, including lost wages, lost benefits and other perquisites of employment and rights of tenure, pain and suffering, mental anguish, emotional distress, outrage, embarrassment, humiliation, loss of joys of living, undue hardship, aggravation, extra expense, the costs of prosecuting this civil action, and other losses.

WHEREFORE, having alleged her cause of action under the law, Plaintiff Darlene Pedicino hereby demands that this court enter judgment in her favor and against defendant in such amount as shall fully and fairly compensate her for all pecuniary and non-pecuniary damages, losses, and expenses incurred by or for her as a result of the wrongful acts and omissions of the defendant, as established according to proof, and that the court further order that defendant is liable to Pedicino for liquidated or exemplary damages in such amount as shall be warranted according to proof based upon the deliberate, malicious, spiteful, vexatious, and/or outrageous conduct of the defendant and its employees and elected officials. Pedicino further demands that this court order defendant to appoint her to the position of Boards and Commissions Secretary, or to such other equivalent position as shall fairly approximate the duties otherwise assigned to defendant's Boards and Commission Secretary, together with back pay and the restoration of all benefits and perquisites of employment from and after June 1, 2000, or front pay in lieu of reinstatement if this court finds that appointment to a position with the City of Twinsburg is not reasonably practicable. Pedicino further demands that this court enter an order awarding her with reimbursement of all expenses of this litigation, including all attorney fees, and taxing all costs of this action against defendant.

*S. David Worhatch*

S. DAVID WORHATCH (0031174)
4920 Darrow Road
Stow, Ohio 44224-1406

330-650-6000 (Akron)
330-650-2300 (Cleveland)
330-650-2390 (Facsimile)
*sdworhatch@nls.net*

**Counsel for Plaintiff**

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Darlene Pedicino hereby demands a trial by jury of all issues presented in this civil action.

*/s/ S. David Worhatch*
**S. DAVID WORHATCH** (0031174)
4920 Darrow Road
Stow, Ohio 44224-1406

330-650-6000 (Akron)
330-650-2300 (Cleveland)
330-650-2390 (Facsimile)
*sdworhatch@nls.net*

**Counsel for Plaintiff**